STATE OF NORTH CAROLINA v. LAFAITE NARCISSE

No. 8711SC902

(Filed 7 June 1988)

### 1. Narcotics § 4.3— cocaine—constructive possession—evidence sufficient

There was sufficient evidence of constructive possession in a prosecution for possession of cocaine with intent to sell and trafficking in cocaine where evidence for the State indicated that in early or mid-December 1986 defendant moved into another man's mobile home and two days later sold cocaine to Mc-Cormack; on 30 December 1986 McCormack returned to the mobile home to see whether defendant and a third man were there and to ascertain whether they had a sufficient supply of cocaine to be able to sell $2,100 worth; McCormack then left to get the money, returned with the money and counted it out on a table to both defendant and the third man; as she counted the money out to defendant and the other man, logs of crack were lying on the table; as the other man multiplied figures on a newspaper, trying to determine the number of logs McCormack was to receive for $2,100, he conversed with defendant in a foreign language and defendant occasionally nodded his head; and law enforcement officials entered the mobile home shortly after McCormack left with the cocaine and found the $2,100 which McCormack had used to purchase the cocaine along with 21.46 grams of cocaine hidden in a heating unit in the same general area where the drug transaction had taken place.

### 2. Narcotics § 4— sale of cocaine—evidence sufficient

The evidence was sufficient to deny defendant's motion to dismiss the charge of sale of cocaine where, although defendant contended he was merely present when the transfer took place between Jarbath and McCormack, defendant's involvement in the transaction was evidenced by his consultation with Jarbath, his proximity to the table where the money was counted out to Jarbath and him, and defendant's close proximity to where the transfer of money and cocaine occurred.

### 3. Arrest and Bail § 3.4; Searches and Seizures § 23— sale of cocaine—warrantless arrest—probable cause for search

The trial court did not err in a prosecution for possession of cocaine with intent to sell, sale of cocaine, and trafficking in cocaine by possession by denying defendant's motion to suppress evidence seized from a mobile home pursuant to a search warrant where the warrant was obtained after officers had forced entry to a mobile home and arrested defendant and another man. There was probable cause to enter the mobile home in that the officer had information which if submitted to a magistrate would have required the issuance of an arrest warrant, the offense occurred in the presence of the officer in that he acquired knowledge of it through monitoring a body transmitter, and there was compliance with the requirements of N.C.G.S. § 15A-401(e)(1), (2) in the forcible entry of the dwelling.

APPEAL by defendant from *Allen, J. B., Judge*. Judgment entered 7 May 1987 in Superior Court, HARNETT County. Heard in the Court of Appeals 7 March 1988.

Defendant was tried and convicted upon indictments proper in form charging him with possession of cocaine with intent to sell, sale of cocaine, and trafficking cocaine by possession. From judgments imposing active sentences, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John F. Maddrey, for the State.*

*D. K. Stewart and Donald E. Harrop, Jr., for defendant-appellant.*

JOHNSON, Judge.

The State presented evidence tending to show the following. In 1986, Detective Bill Wade of the Harnett County Sheriff's Department was working as an undercover drug agent in the county. Around the middle of September, 1986, he went to Gloria McCormack's mobile home located in Angier, North Carolina and made a purchase of cocaine from her. McCormack, who had a reputation of being a drug dealer, told Detective Wade that she acquired cocaine from some Haitians. Detective Wade did not arrest McCormack at this time because his intent was to learn the identity of the persons supplying McCormack with the drugs.

Defendant lived in a mobile home located approximately 150 yards behind McCormack's mobile home with two other persons, Louis Pompee and Charlemagne Jarbath. Defendant moved into the mobile home around early or mid December 1986. Approximately two days after defendant had moved in, McCormack purchased $60.00 worth of cocaine from him. On five or six other occasions McCormack purchased cocaine from Pompee or Jarbath.

On 30 December 1986, at or about 3:30 p.m., Detective Wade returned to McCormack's mobile home to make another purchase. He told her that he wanted to purchase $2,100.00 worth of crack. McCormack went to the mobile home where defendant was living to inform defendant and Jarbath that she wanted to make a buy, and "to make sure they had enough 'crack' (cocaine) for the amount of money [she] was going to bring." Defendant and Jarbath were both inside the mobile home. McCormack returned to

her mobile home and advised Detective Wade that defendant and Jarbath had the crack to sell. McCormack also told Detective Wade that she thought that he was a narcotics agent; that she wished that he was because she needed help; and that she would help him "bust the Haitians." She stated that she needed help because her husband had lost all of his money and was not buying food for her and the children. Detective Wade left the mobile home for a short period of time to confer with Detectives Randy Sturgill, Myles Tart and Sabrina Currin. Detective Wade then returned to McCormack's mobile home with Detective Currin and a body transmitter. He then identified himself and Detective Currin to McCormack. McCormack agreed to make a drug purchase from defendant and Jarbath while wearing the body transmitter.

McCormack returned to the mobile home where defendant was living to make the purchase. She went to the kitchen table where defendant and Jarbath were standing and counted the money out to both of them. While she counted the money defendant and Jarbath talked to each other in a foreign language which she did not understand. Jarbath then took the $2,100.00. There was a newspaper on the table and under it was a number of logs of crack. Jarbath used the newspaper for figuring, in order to determine the number of crack logs McCormack could purchase for $2,100.00. Defendant and Jarbath were charging $60.00 per crack log. Jarbath multiplied some six different sets of figures for approximately five minutes before determining that $2,100.00 would purchase 35 logs of crack at $60.00 each. Each time Jarbath multiplied a set of figures he would converse with defendant in a foreign language. Defendant would occasionally nod his head as he and Jarbath conversed. After determining the number of crack logs McCormack should get, Jarbath counted them out from the crack logs on the table and gave them to her. McCormack then left, returned to Detectives Wade and Currin who were waiting nearby, gave them the logs of crack and told them what had transpired. Detective Wade could hear the conversations being transmitted by the body transmitter McCormack was wearing but could only understand conversations Jarbath had had with McCormack. He could not understand conversations between defendant and Jarbath because they spoke in a foreign language.

From the time McCormack was fitted with the body transmitter until the time she returned to Detectives Wade and Currin

and gave them the drugs, she was never out of the detectives' sights, with one exception, during the time she was with defendant and Jarbath inside the mobile home. No one else entered or left the mobile home during this time. After McCormack had given the detectives the drugs she had purchased and related to them what transpired, Detectives Wade, Tart and Sturgill went to the mobile home to arrest defendant and Jarbath. Detective Wade knocked on the front door of the mobile home and announced, "police!" He then heard a lot of "scrambling and running" coming from inside the mobile home. He again yelled, "police!" No one answered the door so he kicked it open and entered. Upon entering the mobile home, he observed defendant standing in the kitchen-den combination area and to his right he saw Jarbath crawling underneath a bed. Defendant and Jarbath were both arrested. Lying on the kitchen table were the newspaper Jarbath had used to multiply the figures and what "appeared" to be small pieces of crack. Agent Sturgill was then dispatched to get a search warrant which he in fact obtained. After returning with the search warrant it was read to the occupants of the mobile home and the premises were then searched. The search of the premises revealed the $2,100.00 McCormack had used to purchase the crack. The serial numbers had been previously recorded. The money was found in a heating unit together with 21.46 grams of cocaine. The heating unit was located in the kitchen-den area. Also, $2,726.00 was found in a jacket pocket in a bedroom. Defendant stated that the $2,726.00 belonged to him. The State's evidence further tended to show that the cocaine which McCormack purchased from defendant and Jarbath weighed 11.81 grams, and the cocaine found on the kitchen table weighed less than one gram.

Defendant, testifying in his own behalf through an interpreter, presented evidence tending to show that he is from Haiti and speaks very little English. He has been in the United States for seven years working as a migrant farm worker. He met Louis Pompee several years prior to December 1986 while working in North Carolina. He came to North Carolina on 28 December 1986 from Florida to visit Pompee who had agreed to assist him in buying a car. Before leaving Florida he withdrew $3,000.00 from the bank. When he arrived at Pompee's mobile home, Pompee and Jarbath were there. Until 28 December 1986 he had never met

Jarbath. He had never met nor had he ever heard of Gloria Mc-Cormack until 30 December 1986 when she went to Pompee's mobile home where he was living temporarily. He did not know why McCormack was there. When she arrived she and Jarbath went into the bedroom and he remained in the kitchen. He never sold any drugs to McCormack and did not see any drugs on the table. Defendant presented other evidence which tended to show that Pompee told the detectives that drugs sold to McCormack and found in the mobile home did not belong to defendant but belonged to him.

The State presented evidence in rebuttal tending to show that defendant does understand and speak the English language well. Other evidence offered by the State tended to show that while in jail awaiting trial, defendant served as an interpreter for another Haitian and a Mexican who did not speak English.

[1] By his first Assignment of Error defendant contends the trial court erred in the denial of his motions made at the close of all the evidence for dismissal of the charges of possession with intent to sell cocaine and trafficking cocaine by possession. Defendant argues that the evidence was insufficient to show the element of his actual or constructive possession of the cocaine seized in the mobile home and recovered from Gloria McCormack.

> A motion to nonsuit in a criminal case requires consideration of the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. . . . Contradictions and discrepancies are for the jury to resolve and do not warrant nonsuit. . . . All of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is considered by the Court in ruling upon the motion. . . . If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that defendant committed it, a case for the jury is made and nonsuit should be denied.

*State v. McKinney,* 288 N.C. 113, 117, 215 S.E. 2d 578, 581-82 (1975) (citations omitted).

In reviewing the denial of a motion to dismiss, we are required to examine the evidence adduced at trial in the light most favorable to the State to determine if there is substantial evidence of every essential element of the crime. *State v. McKinnon*, 306 N.C. 288, 293 S.E. 2d 118 (1982). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion that the essential element exists. *Id.*

The dispositive question on this issue is whether substantial evidence was adduced which could support the contention that defendant was in constructive possession of the cocaine seized in the mobile home and recovered from McCormack. There was no evidence adduced that defendant was in actual possession.

In a prosecution for possession of contraband materials the State is not required to prove actual physical possession of the materials. Proof of constructive possession is sufficient and that possession need not always be exclusive. *State v. Perry*, 316 N.C. 87, 340 S.E. 2d 450 (1986).

A person is in constructive possession of a thing when, while not having actual possession, he has the intent and capability to maintain control and dominion over that thing. As with other questions of intent, proof of constructive possession usually involves proof by circumstantial evidence. However, in testing the sufficiency of the evidence, the test to be used 'is the same whether the evidence is direct, circumstantial or both.' 'In ruling on the motion, evidence favorable to the State is to be considered *as a whole* in determining its sufficiency.'

*State v. Beaver*, 317 N.C. 643, 648, 346 S.E. 2d 476, 480 (1986) (citations omitted) (emphasis in original).

Evidence for the State indicates that in early or mid December 1986 defendant moved into Pompee's mobile home and two days later sold cocaine to McCormack. On 30 December 1986, McCormack returned to the mobile home to see whether defendant and Jarbath were there and to ascertain whether they had a sufficient supply of cocaine to be able to sell $2,100.00 worth. Once having determined that they could indeed sell her such an amount, McCormack left to get the money, returned with the money and counted it out on a table to both defendant and Jar-

bath. As she counted the money out to defendant and Jarbath, logs of crack (cocaine) were lying on the table. As Jarbath multiplied figures on a newspaper, trying to determine the number of logs McCormack was to receive for $2,100.00 at $60.00 per log, he conversed with defendant in a foreign language and defendant occasionally nodded his head. Shortly after McCormack left with the cocaine, law enforcement officials entered the mobile home, and pursuant to a search warrant, found the $2,100.00 which McCormack had used to purchase the cocaine along with 21.46 grams of cocaine hidden in a heating unit. The heating unit was in the same general area where the drug transaction had taken place.

Considering this evidence as a whole, we find it to be substantial from which a jury could reasonably infer that defendant had the intent and capability to maintain control and dominion over the cocaine sold to McCormack and the cocaine seized from the table and heating unit, and that defendant had the intent to sell the controlled substance. Thus, the evidence was sufficient for the jury to find the essential elements of the crimes beyond a reasonable doubt.

[2] Next, defendant contends the court erred in denying his motion at the close of all the evidence to dismiss the charge of the sale of cocaine. Defendant argues that he was merely present when the transfer took place between Jarbath and McCormack. We find no merit in defendant's contention.

It is uncontroverted that a sale took place between Jarbath and McCormack. The question then becomes whether there was substantial evidence adduced which would support the State's assertion that defendant had participated in that sale. Without again detailing the evidence discussed in defendant's first assignment of error, we find that the evidence is sufficient to show defendant's involvement in the transaction, evidenced by his consultation with Jarbath, his proximity to the table where the money was counted out to Jarbath and him, as well as his close proximity to where the transfer of money and cocaine occurred. Again, this is substantial evidence from which a jury could find the essential elements of the crime beyond a reasonable doubt.

[3] By his third Assignment of Error defendant contends the trial court erred in denying his motion to suppress evidence

State v. Narcisse

seized from the mobile home. Defendant argues that the officers did not have probable cause to enter the mobile home and that evidence seized pursuant to the search warrant, which was obtained after the entry, was tainted by the illegal entry.

Upon defendant's motion to suppress, the court conducted a *voir dire* hearing. Pursuant to G.S. 15A-977(f), the trial judge made detailed findings of fact and conclusions of law. Among its findings the court found that Detective Wade had probable cause to arrest defendant and the legal right to enter the mobile home to make the arrest. Facts found by the trial court are conclusive and will not be disturbed on appeal if they are supported by competent evidence. *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907 (1980).

G.S. 15A-401(b)(1) provides that an officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense in the officer's presence. Probable cause is defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971). One has probable cause if he has information of facts which if submitted to a magistrate would require the issuance of an arrest warrant. *Id.*

*Black's Law Dictionary 1065* (5th ed. 1979) states that

[a]n offense is committed in the "presence" or "view" of an officer, within the rule authorizing arrest without warrant, when the officer sees the act constituting it, though at a distance, or when circumstances within his observation give probable cause for belief that defendant has committed an offense, or when he *hears a disturbance created by the offense* and proceeds [at] once to [the] scene, or if the offense is continuing, or has not been fully consummated when the arrest is made.

(Emphasis supplied.)

In *Webster's Third New International Dictionary 1793* (1968) "presence" is defined in one sense as "a quality in sound reproduction that gives a listener the illusion of being in the same room as the original source of sound rather than in the room with the sound reproducing system."

Clearly under the evidence of this case Detective Wade had information of facts which if submitted to a magistrate would

have required the issuance of an arrest warrant for defendant prior to the time defendant was arrested. Detective Wade had given McCormack money to make the drug purchase from defendant, he listened to the drug purchase transaction take place through the use of a body-bug transmitter worn by McCormack, and immediately following the transaction, McCormack delivered the drugs to the officer and gave him a detailed account of the transaction. Thus, the officer had probable cause to believe that defendant had committed a felony. We also hold that the offense occurred in the presence of the officer, as he acquired knowledge of it through his sense of hearing as he monitored the conversations and drug transaction through the body-bug transmitter worn by McCormack.

Having probable cause to believe that defendant had committed a felony in his presence, Detective Wade was authorized to arrest defendant without a warrant pursuant to G.S. 15A-401(b)(1). To perfect this warrantless arrest the officer was authorized under G.S. 15A-401 to enter the mobile home.

> A law-enforcement officer may enter private premises . . . to effect an arrest when [t]he officer has in his possession a warrant or order for the arrest of a person or *is authorized to arrest a person without a warrant* or order having been issued.
> . . .

G.S. 15A-401(e)(1)(a) (emphasis added).

We believe that there was sufficient compliance with the requirements of G.S. 15A-401(e)(1) and (2) which mandate that entrance be demanded and denied before a police officer can forcibly enter a dwelling for the purpose of making an arrest, where the officer knocked, identified himself twice, heard a lot of scrambling and running noises coming from within the dwelling, and received no reply before he forcibly opened the door. We therefore hold that the trial court's findings of fact are supported by competent evidence and that the court properly denied defendant's motion to suppress.

Defendant's remaining assignments of error not brought forward are deemed abandoned. Rule 28(b)(5), N.C.R. of App. Pro.

In the trial of defendant's case we find

No error.

Chief Judge HEDRICK and Judge ORR concur.