SHAURICE EVETTE MULLINS, A MINOR, BY HER GUARDIAN AD LITEM, THOMAS MULLINS, Plaintiff/Appellee v. BRODY'S STORE MANAGER, MRS. [DIXIE] FRIEND; ROGER FOREMAN, SECURITY GUARD, BRODY'S BRODYCO, INC.; AND PATROLMAN WOOLARD, GREENVILLE POLICE DEPARTMENT; AND BARBARA VOLCHER, BRODY'S EMPLOYEE, Defendants/Appellants

No. 933SC1184

(Filed 1 November 1994)

1. **Municipal Corporations § 444 (NCI4th)— claim against police officer—no allegation of purchase of insurance— immunity in official capacity**

   Plaintiff failed to state a claim for false imprisonment against defendant police officer in his official capacity where plaintiff did not allege a waiver of immunity by the purchase of liability insurance by the municipality.

   **Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 37 et seq.**

   **Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2D 1437.**

**2. Municipal Corporations § 459 (NCI4th)— police officer— no action outside scope of duties—immunity in individual capacity**

The trial court erred in concluding that plaintiff was entitled to recover judgment against defendant police officer in his individual capacity for false imprisonment where the officer responded to a shoplifting call involving plaintiff, acted at all times in accordance with his good faith belief that plaintiff had concealed merchandise, and at no time acted in a manner which was corrupt, malicious, or outside and beyond the scope of his duties, and thus had qualified immunity.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 675 et seq.**

**3. False Imprisonment § 9 (NCI4th)— sufficiency of evidence of false imprisonment**

The trial court did not err in concluding that plaintiff was falsely imprisoned and that she did not voluntarily consent to the search of her shopping bag and her person where the evidence tended to show that defendant store manager and a male employee escorted plaintiff, her father, and her·brother back into the store from the parking lot; two security guards·entered the office, and a police officer who was armed and in uniform arrived; plaintiff was asked to empty her shopping bag and told she needed to be searched; when plaintiff objected, the officer told her that he had probable cause to suspect that she had concealed merchandise; and these facts were sufficient to induce in plaintiff a reasonable apprehension of force and to support the conclusion that she was restrained against her will.

**Am Jur 2d, False Imprisonment § 13.**

**4. False Imprisonment § 9 (NCI4th)— customer detained by store manager—no probable cause to believe crime committed—manager not immune from suit**

Defendant department store manager was not immune from plaintiff's suit for false imprisonment pursuant to N.C.G.S. § 14-72.1(c), since defendant did not have probable cause to believe that plaintiff had committed a crime at the store.

**Am Jur 2d, False Imprisonment § 13.**

MULLINS v. FRIEND

[116 N.C. App. 676 (1994)]

**Construction and effect, in false imprisonment action, of statute providing for detention of suspected shoplifters. 47 ALR3d 998.**

5. **False Imprisonment § 11 (NCI4th)— amount of damages— no abuse of discretion**

The trial court in an action for false imprisonment did not abuse its discretion in awarding plaintiff $10,000 in compensatory damages.

**Am Jur 2d, False Imprisonment §§ 134-150.**

**Excessiveness or inadequacy of compensatory damages for false imprisonment or arrest. 48 ALR4th 165.**

6. **False Imprisonment § 11 (NCI4th)— punitive damages improperly awarded**

The trial court erred in determining that plaintiff was entitled to recover punitive damages from defendant store manager for false imprisonment where defendant's actions did not involve insult, indignity, malice, oppression, or bad motive, and were not willful or wanton.

**Am Jur 2d, False Imprisonment §§ 134-150.**

**Pleading good faith or lack of malice in mitigation of damages in action for false arrest or imprisonment. 49 ALR2d 1460.**

**Defendant's state of mind necessary or sufficient to warrant award of punitive damages in action for false arrest or imprisonment. 93 ALR3d 1109.**

Judge JOHNSON concurring in part and dissenting in part.

Appeal by defendants Dixie Friend and T.V. Woolard from judgment signed 7 May 1993 and filed 12 May 1993 by Judge Quentin T. Sumner in Pitt County Superior Court. Heard in the Court of Appeals 1 September 1994.

*John H. Harmon for plaintiff-appellee.*

*Battle, Winslow, Scott & Wiley, P.A., by J. Brian Scott and M. Greg Crumpler, for defendant-appellant Dixie Friend.*

*Ward and Smith, P.A., by Kenneth R. Wooten and Cheryl A. Marteney, for defendant-appellant T.V. Woolard.*

## MULLINS v. FRIEND

[116 N.C. App. 676 (1994)]

LEWIS, Judge.

Plaintiff commenced this action for, *inter alia*, false imprisonment. After a bench trial, the trial court concluded that plaintiff had been falsely imprisoned and awarded her compensatory damages of $10,000 against defendant Dixie Friend, $10,000 against defendant T.V. Woolard, and punitive damages of $10,000 against each. We note that the other defendants named in the complaint were not served with process and were not parties to this action. From the judgment, defendants Friend and Woolard appeal.

The evidence presented at trial tended to show that on the afternoon of 25 April 1991, plaintiff, sixteen years old at the time, went with her father and brother to the Pitt Plaza Mall in Greenville. After making a purchase at the Foot Locker store, plaintiff went, along with her father and brother, to Brody's Department Store (hereinafter "Brody's" or "the store") to purchase footless stockings. Plaintiff's father remained at the entrance, and plaintiff and her brother went into the store. Plaintiff, wearing bib overalls and carrying a shopping bag, approached a store clerk to find out where the stockings were located, and was informed by the clerk that they were around the corner. From her vantage point, the clerk could not see the area where the stockings were displayed.

Plaintiff located the stockings and, upon seeing the price tag, called her brother over to discuss the purchase with him. The two decided the stockings were too expensive, and plaintiff placed the stockings back on the shelf. While plaintiff was examining the stockings, the store clerk, still unable to see the area where the stockings were displayed, heard the sound of rustling paper coming from that area. The clerk went over to the stocking area and saw that plaintiff had nothing in her hands. Plaintiff and her brother then left the area. The clerk noticed that plaintiff was walking with a limp. Plaintiff and her brother met their father, and the three left the store.

After the family left the store, the clerk reported to Friend, the store manager, that she suspected plaintiff of shoplifting. The clerk described to Friend what she had heard and seen and stated that she thought that plaintiff had put merchandise in her overalls. Friend and a male employee, identified as Todd, followed the Mullins out of the shopping center and into the parking lot. Friend and Todd caught up to the Mullins and told them that they needed to come back into the store. Friend and Todd took the Mullins to Friend's office, and Friend directed Todd to stay with the Mullins while she went to get security.

While Friend was gone, plaintiff's father went to look outside the office, and Todd told him to sit back down. Thereafter, two security guards entered the office. Friend also returned to the office. A short time later, Officer Woolard, of the Greenville Police Department, arrived at the store, and Friend told Officer Woolard what the store clerk had reported to her. Officer Woolard entered the office and advised the Mullins to calm down and cooperate. Friend then asked plaintiff to empty her Foot Locker shopping bag onto the table, but plaintiff's father protested. Officer Woolard repeated the request. After plaintiff's father got the names of the people in the office, he allowed plaintiff to empty her bag. No Brody's merchandise was found.

Officer Woolard then stated that plaintiff needed to be searched. When plaintiff objected, Officer Woolard told plaintiff that he had probable cause to suspect that she had concealed merchandise. Plaintiff then acceded and went into a bathroom with only a female employee of Brody's. Plaintiff was directed to pull down her pants and lift up her shirt. She did not remove her bra or underpants. Again, no merchandise was found. Plaintiff then got dressed and went back into Friend's office upset and crying. Friend apologized and told the Mullins they could leave. From the time the Mullins were stopped in the parking lot to the time they were told they were free to leave, between thirty minutes and one hour passed.

### Defendant Woolard's Appeal

Officer Woolard first contends that the trial court erred in entering judgment against him, because he was immune from suit. It is not clear whether plaintiff brought her action against Officer Woolard in his official capacity as a Greenville Police Officer, in his individual capacity, or both. However, for the following reasons, we conclude that Officer Woolard was immune from suit in either capacity.

[1] We first discuss official capacity immunity. Under the doctrine of governmental immunity, a municipality and its officers or employees sued in their official capacities are immune from suit for torts committed while the officers or employees are performing a governmental function. *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278-79 (1993), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). A police officer in the performance of his duties is engaged in a governmental function. *Galligan v. Town of Chapel Hill*, 276 N.C. 172, 175, 171 S.E.2d 427, 429 (1970). A city can waive its immunity, however, by purchasing liability insurance. N.C.G.S. § 160A-485(a) (1987);

*Combs v. Town of Belhaven*, 106 N.C. App. 71, 73, 415 S.E.2d 91, 92 (1992). Immunity is waived only to the extent that the city is indemnified by the insurance contract from liability for the acts alleged. *Id.* If the plaintiff does not allege a waiver of immunity by the purchase of insurance, the plaintiff has failed to state a claim against the governmental unit or the officer or employee. *Whitaker v. Clark*, 109 N.C. App. 379, 384, 427 S.E.2d 142, 145, *disc. review and cert. denied*, 333 N.C. 795, 431 S.E.2d 31 (1993). In the case at hand, plaintiff did not allege a waiver of immunity. Accordingly, plaintiff failed to state a claim against Officer Woolard in his official capacity.

[2] We next address the propriety of suing Officer Woolard in his individual capacity. The general rule is that a public official is immune from personal liability for mere negligence in the performance of his duties, but is not immune if his actions were corrupt or malicious or if he acted outside and beyond the scope of his duties. *Slade v. Vernon*, 110 N.C. App. 422, 428, 429 S.E.2d 744, 747 (1993). Police officers are public officials. *Shuping v. Barber*, 89 N.C. App. 242, 248, 365 S.E.2d 712, 716 (1988).

In the case at hand, Officer Woolard responded to a shoplifting call from Brody's. When he arrived, he was told what the clerk had reported, and he proceeded to the manager's office, where plaintiff was being detained. Officer Woolard told plaintiff and her family to calm down and to cooperate. He then repeated Friend's request that plaintiff empty her shopping bag. When it was clear that no Brody's merchandise was in plaintiff's bag, Officer Woolard stated that plaintiff needed to be searched. When plaintiff objected, Officer Woolard told her that he had probable cause to suspect that she had concealed merchandise. Plaintiff then went into a bathroom with a female employee and pulled down her pants and lifted up her shirt. Officer Woolard's participation in the detention lasted approximately ten minutes. His actions were at all times in accordance with his good faith belief that plaintiff had concealed merchandise. Officer Woolard's actions were not corrupt, malicious, or outside and beyond the scope of his duties. Therefore, Officer Woolard was entitled to qualified immunity from suit. Accordingly, the trial court erred in concluding that plaintiff was entitled to recover judgment against Officer Woolard for false imprisonment. We note that our disposition of this issue makes it unnecessary to address Officer Woolard's remaining contentions on appeal.

MULLINS v. FRIEND

[116 N.C. App. 676 (1994)]

Defendant Friend's Appeal

I.

**[3]** Friend's first contention is that the trial court erred in concluding that plaintiff was falsely imprisoned. The tort of false imprisonment has been defined by our Supreme Court as follows:

> "False imprisonment is the illegal restraint of the person of any one against his will." . . . "There is no legal wrong unless the detention was involuntary. False imprisonment may be committed by words alone, or by acts alone, or by both; it is not necessary that the individual be actually confined or assaulted, or even that he should be touched. Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment."

*Hales v. McCrory-McLellan Corp.*, 260 N.C. 568, 570, 133 S.E.2d 225, 227 (1963) (citations omitted).

Friend first argues that no threat of force, express or implied, was manifested against plaintiff, and that plaintiff was not restrained against her will. We disagree. Friend and Todd escorted plaintiff and her father and brother back into the store and into Friends's office. In the presence of the Mullins, Friend told Todd to stay with the Mullins in the office while she went to get security. Thereafter, two security guards entered the office. Then Friend returned, and Officer Woolard arrived. Officer Woolard was in uniform and had his gun. Friend and Officer Woolard requested that plaintiff empty her shopping bag. Then Officer Woolard told plaintiff that she needed to be searched. When plaintiff objected, Officer Woolard told plaintiff that he had probable cause to suspect that she had concealed merchandise. We believe that these facts were sufficient to induce in plaintiff a reasonable apprehension of force, *see Ayscue v. Mullen*, 78 N.C. App. 145, 148, 336 S.E.2d 863, 865 (1985), and to support the conclusion that plaintiff was restrained against her will.

Friend's next argument is that the trial court's finding of fact that plaintiff did not voluntarily consent to the search of her shopping bag and her person was not supported by the evidence. Friend argues, instead, that plaintiff did consent to the searches. Based on the facts and circumstances as set forth above, however, we conclude that the searches were not consensual, but were the result of intimidation.

Regardless, it is clear that plaintiff did not consent to the illegal restraint of her person, and thus was falsely imprisoned.

[4] Lastly, Friend argues that even if plaintiff was falsely imprisoned, Friend is immune from suit pursuant to N.C.G.S. § 14-72.1(c) (1993), which provides in part that a merchant or his employee shall not be held civilly liable for detention or false imprisonment of a person where such detention is in a reasonable manner, for a reasonable length of time, and there is probable cause to believe that the person has willfully concealed goods or merchandise from the store. Probable cause has been defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. One has probable cause if he has information of facts which if submitted to a magistrate would require the issuance of an arrest warrant." *State v. Narcisse*, 90 N.C. App. 414, 421, 368 S.E.2d 654, 658, *disc. review denied*, 323 N.C. 368, 373 S.E.2d 553 (1988) (citation omitted).

In the case at hand, the trial court concluded that Friend did not have probable cause to believe that plaintiff had committed a crime at Brody's. Friend contends, however, that she did have probable cause to believe that plaintiff had willfully concealed merchandise from the store. The facts reveal that Friend had no first-hand knowledge of plaintiff's actions. The sales clerk reported to Friend that plaintiff and two other people had entered the store together talking loudly. One of the three remained near the store entrance, and the other two proceeded to the clerk's department. Plaintiff asked the clerk to direct her to a particular section of the department and the clerk did. Plaintiff then motioned to the man standing at the entrance, indicating the location of the particular section. From her vantage point, the clerk could not see that section. The clerk did hear a noise coming from the section, however, and it sounded like the rustling of paper. The clerk went to the section and saw plaintiff, who had been joined by the second person. The clerk observed that plaintiff was not holding anything. The second person then left the section. Plaintiff also left and headed toward the exit. The clerk noticed that plaintiff was walking with a limp. The clerk believed that plaintiff had concealed merchandise in her clothing, but admitted to Friend that she never saw plaintiff conceal anything.

Friend testified that from her experience in store security, she knew that it was common for shoplifters to wear loose-fitting clothing, and that shoplifters often engaged in "splitting." That is, the

shoplifter and another person split up, with the other person remaining near the store's entrance. Friend contends that from her experience and from what the clerk reported to her, she had probable cause to suspect that plaintiff had concealed merchandise. We disagree. Friend's suspicion was not "supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." *Narcisse*, 90 N.C. App. at 421, 368 S.E.2d at 658. Likewise, the facts known to Friend, if submitted to a magistrate, would not require the issuance of an arrest warrant. *Id.* Thus, the trial court did not err in concluding that Friend did not have probable cause. Because Friend did not have probable cause, she is not immune from suit under N.C.G.S. § 14-72.1(c) even though her actions were otherwise reasonable.

## II.

[5]  Friend's next contention on appeal is that even if she is liable for false imprisonment, the trial court's award of $10,000 in compensatory damages is excessive. The trial court's award of damages at a bench trial is a matter within its sound discretion, and will not be disturbed on appeal as being excessive unless an abuse of discretion is manifest. *Sherrill v. Boyce*, 265 N.C. 560, 561, 144 S.E.2d 596, 598 (1965). In the case at hand, plaintiff testified that she was "very upset" after the search of her person. Plaintiff's father testified that after plaintiff was searched, she returned to the office upset and crying. Finally, plaintiff testified that her friends at school found out about the incident. We conclude that there was no manifest abuse of discretion in the award of compensatory damages.

## III.

[6]  Friend's final contention is that the evidence was insufficient to support an award of punitive damages. To justify an award of punitive damages, the tort in question must be accompanied by *additional* aggravating or outrageous conduct. *Rogers v. T.J.X. Cos.*, 329 N.C. 226, 230, 404 S.E.2d 664, 666 (1991). Outrageous conduct involves " 'insult, indignity, malice, oppression or bad motive.' " *Id.* (quoting *Swinton v. Savoy Realty Co.*, 236 N.C. 723, 727, 73 S.E.2d 785, 788 (1953)). Aggravation may also be shown where the wrongful conduct is willful or wanton. *Id.* at 230, 404 S.E.2d at 666-67.

Our research has revealed only two cases addressing the issue of punitive damages for false imprisonment in a commercial establishment. In *Rogers v. T.J.X. Cos.*, the plaintiff was detained by a store

security officer, who was wearing a badge of his own design, and another employee for approximately thirty-five minutes. Upon being taken to the security office, the plaintiff denied any wrongdoing and immediately dumped the contents of her purse onto the desk in an effort to prove her innocence. The officer ignored the plaintiff's protests and directed her to have a seat. The officer repeatedly questioned and badgered the plaintiff about the location of the allegedly missing merchandise. He then told the plaintiff that he could handcuff her to a chair, call the police, and have them put her in jail. The officer then forced the plaintiff to sign a release of liability as a condition of her release from his custody. In addition, the plaintiff was made to disclose her social security number, driver's license number, and telephone number before being released. The Court concluded that this evidence demonstrated sufficient aggravation of the tort of false imprisonment to survive the defendants' motion for summary judgment on the issue of punitive damages. *Id.* at 232, 404 S.E.2d at 668.

In *Ayscue v. Mullen*, 78 N.C. App. 145, 336 S.E.2d 863 (1985), the defendant store owner had a policy in effect which required customers who did not make a purchase to obtain a "no sale slip" before leaving each department. The two plaintiffs, unaware of the policy, tried to leave the store without a slip. The defendant cashier asked them if they had a slip, and the plaintiffs replied that they did not. The cashier then asked one of the plaintiffs if she was going to get one, and the plaintiff replied, "No." The cashier jumped over the counter, bolted the door, stood in front of it, and would not let the plaintiffs leave. He told the plaintiffs they could not leave without a "no sale slip." The cashier then asked the second plaintiff if she was going to get a slip, and she, too, not knowing of the policy, replied, "No." The cashier never told the plaintiffs why they were being detained. In an attempt to leave the store, the first plaintiff pushed the cashier. The cashier pushed her back with his chest. The plaintiffs then offered to let the cashier search their purses or call the police, but the cashier refused. Shortly thereafter, the owner of the store instructed the cashier that the plaintiffs were okay and to let them out. The detention lasted from three to five minutes. This Court held that "there was an entire lack of those elements of outrageous conduct which would subject the defendants to punitive damages." *Id.* at 149, 336 S.E.2d at 866.

In the case at hand, as in *Ayscue*, the false imprisonment was not accompanied by additional aggravating or outrageous conduct. While Friend erroneously believed she had probable cause to detain plain-

tiff, Friend's actions did not involve insult, indignity, malice, oppression, or bad motive, and were not willful or wanton. We therefore hold that the trial court erred in finding that Friend engaged in outrageous conduct and in concluding that Friend's outrageous conduct entitled plaintiff to recover punitive damages from Friend.

For the reasons stated, the judgment against Friend is affirmed as to the award of compensatory damages and reversed as to the award of punitive damages. The judgment against Officer Woolard is reversed.

Affirmed in part, reversed in part.

Judge GREENE concurs.

Judge JOHNSON concurs in part and dissents in part.

Judge JOHNSON concurring in part and dissenting in part.

I concur in all respects except in regards to defendant Friend's punitive damages. As to this, I respectfully dissent.

To justify an award of punitive damages for false imprisonment, an additional element of aggravating or outrageous conduct must exist. *Blackwood v. Cates*, 297 N.C. 163, 254 S.E.2d 7 (1979); *Rogers v. T.J.X. Companies*, 329 N.C. 226, 404 S.E.2d 664 (1991). "Evidence of insult, indignity, malice, oppression or bad motive" constitutes outrageous behavior. *Id.* at 230, 404 S.E.2d at 666.

Requiring plaintiff to drop her pants down to her ankles and lift her shirt up was more than enough evidence of insult, indignity and oppression constituting aggravating or outrageous conduct. The evidence presented shows that plaintiff was unjustly detained and subjected to outrageous conduct without benefit of probable cause. Under the facts and circumstances of this case the conduct was outrageous and exceeded the bounds of common decency.

Thus, I respectfully dissent and would affirm the trial court's award for punitive damages.