BENCHMARK CAROLINA AGGREGATES, INC., PLAINTIFF-APPELLANT v. MARTIN MARIETTA MATERIALS, INC., CENTRAL ROCK COMPANY, AND AMERICAN STONE COMPANY, DEFENDANTS-APPELLEES

No. COA96-327

(Filed 18 March 1997)

**Corporations § 213 (NCI4th)— judicial dissolution—two companies—fifty percent interest—wholly owned subsidiary— summary judgment—forecast of evidence—management agreement**

In a judicial dissolution case involving a stone company in which two corporations each owned a fifty percent interest, the trial court erred in granting summary judgment in favor of defendants where plaintiff's forecast of evidence tending to show

that a deadlock among directors concerning whether a management agreement with one corporate owner of the stone company should be terminated raised factual questions as to whether (1) the affairs of the jointly owned corporation were being conducted to the advantage of the shareholders generally; (2) liquidation was reasonably necessary for the protection of the rights or interests of the complaining shareholder; and (3) the corporate assets were being misapplied or wasted by perpetuation of the defendants' management agreement. N.C.G.S. § 55-14-30(2).

**Am Jur 2d, Summary Judgment § 27.**

Appeal by plaintiff from summary judgment entered 13 December 1995 by Judge Knox V. Jenkins in Wake County Superior Court. Heard in the Court of Appeals 3 December 1996.

*Bugg & Wolf, P.A., by John E. Bugg and William J. Wolf, for plaintiff appellant.*

*Poyner & Spruill, L.L.P., by Cecil W. Harrison, Jr., for Martin Marietta Materials, Inc., and Central Rock Company, defendant appellees.*

SMITH, Judge.

This case involves two companies (the principals), each of whom own a fifty-percent (50%) interest in another company. Because neither of the principals can muster a majority vote on a significant management decision involving the co-owned company, plaintiff argues N.C. Gen. Stat. § 55-14-30(2) (1990) compels judicial dissolution of the co-owned company. We disagree with plaintiff that § 55-14-30(2) *compels* dissolution. However, we do agree with plaintiff that material issues of fact exist which might prompt judicial dissolution. Accordingly, we reverse the trial court's grant of summary judgment to defendants.

The facts, in the light most favorable to plaintiff, are as follows. American Stone Company (American) was formed in 1969 for the purpose of operating a stone quarry. The current owners of American are plaintiff Benchmark Aggregates, Inc. (Benchmark or plaintiff), and defendant Central Rock Company (Central), each of whom owns fifty percent of American's stock. Originally, Central and Nello L. Teer Company (Benchmark's predecessor) were the fifty-fifty owners of the American stock. In the late 1980's Martin Marietta Materials, Inc.

(Martin) purchased, Central, transforming Central into a wholly-owned subsidiary of Martin.

American was formed by the Nello L. Teer Company (Teer) and Central in 1969. Shortly after the formation of American, Central and American entered into a contract (the Management Agreement) whereby it was agreed that Central would provide management and accounting services for American. American agreed to pay Central ten cents ($.10) for each ton of stone sold by the American quarry. In 1980, Central and Teer agreed to a ten cent ($.10) raise in the management fee, raising Central's per ton fee to twenty cents ($.20). Since the 1980 fee change, there have been no further changes in the per ton rate paid Central. However, as the area surrounding Wake County, North Carolina, has grown through increased urbanization, there has been a steady increase in the tonnage sold by the quarry. This consistently increasing volume of stone sales has led to progressively increased revenue to Central (and thereby to Martin) under the Management Agreement.

In February of 1994, at an American Board of Director's meeting, Director R.R. Winchester (who is also a vice-president of Martin) made a motion to increase Central's management fee to twenty-five cents ($.25) per ton. Director Winchester's motion was tabled to allow the Benchmark affiliated directors time to study the impact of the increased fee. At American's October 1994 board meeting, Benchmark's three affiliated directors proposed and voted in favor of a motion to terminate the Management Agreement. In response, the directors affiliated with Martin/Central voted against termination. As a result of the deadlock, no action has been taken with regard to the Management Agreement as of the date of this appeal.

We note that by stipulation of the parties, American is no longer a defendant for purposes of this appeal.

To sustain summary judgment, defendant, as the moving party, is obligated to show that no material facts are in dispute and that it is entitled to judgment as a matter of law. *Moore v. City of Creedmoor*, 120 N.C. App. 27, 36, 460 S.E.2d 899, 904-05 (1995). In addition, the record is to be viewed in the light most favorable to the non-movant, giving him the benefit of all inferences which reasonably arise therefrom. *Id.* Evidence properly considered on a motion for summary judgment "includes admissions in the pleadings, depositions on file, answers to Rule 33 interrogatories, admissions on file . . . affidavits, and any other material which would be admissible in evidence or of

BENCHMARK CAROLINA AGGREGATES v. MARTIN MARIETTA MATERIALS

[125 N.C. App. 666 (1997)]

which judicial notice may properly be taken." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971).

Plaintiff argues that dissolution is necessary under N.C. Gen. Stat. § 55-14-30(2) because American is not being conducted to the advantage of shareholders generally, and because dissolution is necessary for the protection of Benchmark. We believe the question of whether a § 55-14-30(2) dissolution is necessary under these circumstances presents a number of genuine issues of material fact. N.C. Gen. Stat. § 55-14-30(2) states that the superior court may dissolve a corporation

> (2) In a proceeding by a shareholder if it is established that (i) the directors or those in control of the corporation are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock . . . [and] the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, [or if] (ii) liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder . . . [or] (iv) the corporate assets are being misapplied or wasted . . . .

Section 55-14-30(2) allows the court to order an involuntary corporate dissolution due to director deadlock, without limitation as to the duration or specific effects of the deadlock. N.C. Gen. Stat. § 55-14-30(2) Official Comment n.2; Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 28-10(a) at 554 (5th ed. 1995). Such a decision by the court should "be exercised on the basis of all factors relating to whether dissolution is equitable in the particular case." *Robinson*, § 28-10(a) at 554.

Plaintiff argues that, even though there has been no showing of a discriminatory allocation of corporate dividends from American to defendant Central, Central is nevertheless using the director deadlock to perpetuate the profitable flow of fees from American to Central. The record reflects that Martin/Central enjoys an income stream of $250,000.00 in accounting and managerial fees from American. Thus, plaintiff argues, its rate of return on its fifty-percent (50%) interest in American, adjusted for the fees flowing to Central, is significantly less than Central's rate of return. These divergent rates of return are, plaintiff argues, evidence that "the business and affairs of the corporation [are] no longer be[ing] conducted to the advantage of the shareholders *generally,* because of the deadlock[.]" N.C. Gen. Stat. § 55-14-30(2)(i) (emphasis added).

Plaintiff Benchmark has also forecast evidence demonstrating that the director deadlock has deleteriously affected American's interests, and therefore Benchmark's shareholder interests, because of "American['s] [arguable ability to] obtain the same [managerial and accounting] services . . . at a lower price if Martin were required to competitively bid for the opportunity." According to plaintiff, the director deadlock prevents American from seeking the lowest (or most advantageous) cost provider for the management and accounting services it needs. Therefore, American is harmed at the expense of Benchmark, to the benefit of Martin/Central.

Plaintiff's forecast of evidence supports its assertion that the deadlock is being used to perpetuate the Management Agreement, in that "the business [of American] is being conducted to the unfair advantage of one shareholder or group of shareholders [namely, Martin/Central], or that a shareholder or group of shareholders is benefitting at the expense of the others." *Foster v. Foster Farms, Inc.*, 112 N.C. App. 700, 708, 436 S.E.2d 843, 848 (1993) (discussing grounds for application of a § 55-14-30(2)(i) judicial dissolution). Furthermore, in the context presented by plaintiff, issues of fact have been raised as to whether American's Martin/Central directors have violated their fiduciary duties to American under N.C. Gen. Stat. § 55-8-30(a)(3) (1990) by disallowing any cost/benefit analysis of Central's contract with American. If the accounting and managerial service contract between American and Central is, in fact, a "transaction [un]fair to [American]," then it would appear the deadlock might represent a director conflict of interest. N.C. Gen. Stat. § 55-8-31 (1990).

Plaintiff has raised all of these issues by its forecast of evidence. In *Meiselman v. Meiselman*, 309 N.C. 279, 307-08, 307 S.E.2d 551, 568 (1983), our Supreme Court held that directors of a corporation are quasi trustees of the property of *that* corporation for the benefit of the corporation and its shareholders. It is a director's duty to administer the trust assumed by them, not for their own profit, but for the mutual benefit of all interested parties. *Id.* In this case, it is a fair question, raised properly by plaintiff's evidence, whether the benefits of the Management Agreement serve the best interests of American or Martin/Central. A director, in the discharge of his duties as a director, may not serve two masters; his utmost duty is to the corporation to which he is entrusted, and to no other.

Plaintiff has forecast evidence tending to show that the deadlock among directors raises factual questions as to whether: (1) the affairs

of the corporation are being conducted to the advantage of the share-holders generally; (2) liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder; and (3) the corporate assets are being misapplied or wasted by perpetuation of the American/Central Management Agreement. *See* N.C. Gen. Stat. § 55-14-30(2). If, indeed, plaintiff can prove that the Martin/Central directors are, by their actions, preserving a deadlock to the detriment of American, then the questions of fiduciary responsibility discussed above also come into play.

For the reasons stated, summary judgment is reversed and remanded for trial on the merits.

Reversed.

Judges LEWIS and WALKER concur.